```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS


CELLECT LLC,                    )
          Plaintiff,            )
                                )
          v.                    )    C.A. No. 09-11908-MLW
                                )
ROGERS CORPORATION,             )
          Defendant.            )
```

<u>MEMORANDUM AND ORDER</u>

WOLF, D.J.                                      November 23, 2010

In this case, plaintiff Cellect LLC alleges that defendant Rogers Corporation violated the laws of the Commonwealth of Massachusetts by misappropriating its trade secrets. Such trade secrets were allegedly disclosed to Rogers pursuant to technology agreements between the parties. The case was brought and proceeded in the courts of the Commonwealth of Massachusetts.

Rogers filed a motion for summary judgment, contending that a release of all claims by Cellect entered into on June 21, 2005 barred Cellect's common law and statutory (M.G.L. c.93, §42) claims that Rogers had misappropriated its trade secrets and used them in an international patent application that it submitted, under the Patent Cooperation Treaty, to the World Intellectual Property Organization (the "WIPO"). This application was subsequently converted into a traditional United States Patent Application with the United States Patent and Trademark Office (the "PTO"). In opposing the motion for summary judgment, Cellect asserted that:

> Documents produced by Rogers on or about November 11, 2008, reveal that Rogers took steps <u>after</u> June 21, 2005, to unlawfully take the Cellect Technology belonging to Cellect [footnote omitted]. For example, on August 2, 2005, Rogers filled out and submitted a Declaration of Inventorship to the WIPO that included [Rogers employees] Simpson and Svoboda, but specifically excluded Cellect and [Cellect employee] Scott Smith as inventors. Then, on November 7, 2006, Rogers filed its US Application, again excluding Cellect and Smith as inventors.
>
> Had Rogers identified Cellect and/or Smith as the rightful inventor in the August 2 Declaration [in the May 9 PCT Application] and in the [United States Application], Cellect would arguably not have a misappropriation claim, because it would have been rightfully credited as the inventor with rights to the Cellect Technology. Under these facts, Rogers would not have "unlawfully taken" the technology with "intent to convert to [its] own use" as provided in M.G.L. c. 93, §42. It was Roger's [sic] failure to identify Cellect as the inventor on August 2, 2005, and November 7, 2006, that gives rise to Cellect's misappropriation claims.

Cellect Opposition at 10-11 (emphasis in original). Rogers' motion for summary judgment concerning Cellect's misappropriation of trade secrets claim was denied because the parties' filings revealed that genuine issues of material fact existed as to whether events allegedly occurring after the June 21, 2005 release constituted misappropriation of trade secrets.

Rogers then removed the case to this federal court, pursuant to 28 U.S.C. §1441,[1] claiming that as framed in Cellect's

---

[1] The parties contest the timeliness of the removal. Under 28 U.S.C. §1446(b), a defendant wishing to remove a case from state court must file a notice of removal within 30 days of receiving "a copy of an amended pleading, motion or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. §1446(b). Rogers asserts

opposition to the motion for summary judgment, the case arises under an Act of Congress and, therefore, federal jurisdiction exists under 28 U.S.C. §1338(a). Cellect moved to remand. The motion was referred for a report and recommendation to the Magistrate Judge. The Magistrate Judge recommended that the motion to remand be granted. Rogers filed an objection to that recommendation.

The court has considered the issues raised by Rogers' objection <u>de</u> <u>novo</u>. <u>See</u> 28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72. It agrees with the Magistrate Judge that this case must be remanded.

28 U.S.C. §1338(a) provides for exclusive federal jurisdiction in "any civil action arising under an Act of Congress relating to

---

that this case became removable when Cellect first contended, in its opposition to Rogers' motion for summary judgment filed on October 14, 2009, that Rogers' failure to identify Cellect as the inventor in its patent applications was the key element of its claim. Rogers argues that because it filed its notice of removal on November 6, 2009, which was within 30 days of that opposition, its notice was timely. Cellect contests this account, arguing that earlier filings as well as deposition testimony identified Rogers' patent applications as the basis for its state law claims.

As discussed in this Memorandum and Order, §1338 creates jurisdiction only in those cases in which federal patent law creates the cause of action or the plaintiff's right to relief necessarily depends on the resolution of a substantial question of patent law. Therefore, a determination of the timeliness of Rogers' motion depends on a determination of when, if ever, a filing gave rise to federal jurisdiction under §1338(a). Because the court finds that this case is not removable in any event, a determination of the timeliness of the removal is not necessary.

patents...."  28 U.S.C. §1338(a).  However, as the Federal Circuit has "repeatedly said, the mere presence of a patent issue cannot of itself create a cause of action under the patent law." Consolidated World Housewares, Inc. v. Finkle, 831 F.2d 261, 265 (Fed. Cir. 1987).  Rather, §1338 creates jurisdiction "only in those cases in which...either [] federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims."  Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 809 (1988).

In this case, neither Cellect nor Rogers has a patent which is alleged to be infringed or invalid.  Therefore, this case does not arise under the patent laws in the most classic sense. Nevertheless, Rogers asserts that Cellect's misappropriation of trade secrets claims will require a decision concerning the inventorship of the technology for which it was seeking a patent after June 21, 2005 and, therefore, federal patent law is a necessary element of Cellect's claims.

This contention, however, is not correct.  State law will determine what, if anything, constituted a trade secret that Rogers was bound not to disclose under its technology agreements with Cellect and whether Rogers unlawfully misappropriated it.  See Picker Intern. Corp. v. Imaging Equipment Services, Inc., 931 F.

Supp. 18, 23 (D. Mass. 1995) (citing USM Corporation v. Marson Fastener Corporation, 379 Mass. 90, 98-99 n. 9 (1979)). To prove it had a trade secret, Cellect will have to prove:

> 1. The extent to which the information is known outside the plaintiff's business;
> 2. The extent to which it is known by employees and others involved in the plaintiff's business;
> 3. The extent of measures taken by the plaintiff to guard the secrecy of the information;
> 4. The value of the information to the plaintiff and to its competitors;
> 5. The amount of effort or money expended by the plaintiff in developing the information; and
> 6. The ease or difficulty with which the information could be properly acquired or duplicated by others.

Id. In order to prove misappropriation of a trade secret, Cellect will have to prove that: (1) the matter in question is a trade secret; (2) it took reasonable steps to preserve that matter's confidentiality; (3) Rogers breached a confidential relationship to acquire and use the trade secret. Id. at 35 (citing Restatement of Torts §757; Data General Corp. v. Grumman Systems Support Corp., 36 F.3d 1147, 1165 (1st Cir. 1994)).[2]

Therefore, the resolution of Cellect's claims will turn on whether the technology at issue was a trade secret and, if so, whether Cellect's technology agreements with Rogers permitted

---

[2] "[T]he statutory codification of the tort of misappropriation of trade secrets [M.G.L. c.93, §42] does not appear to alter the common law prima facie elements for this tort...." Data General Corp. v. Grumman Systems Support Corp., 795 F. Supp. 501, 507 (D. Mass. 1992). Therefore, the analysis is the same for Cellect's common law and statutory claims.

Rogers to claim inventorship in its patent application. These issues will not require resolution of the question of whether Cellect is the "inventor" of the technology for the purpose of patentability. Accordingly, Rogers has not shown that any issue of inventorship, as that term is defined in the patent law, will necessarily have to be decided in this case.

This case is analogous to Board of Regents, The University of Texas System v. Nippon Telephone and Telegraph Corp., 414 F.3d 1358, 1363 (Fed. Cir. 2005). In Board of Regents, a Japanese scientist worked with scientists at the University of Texas ("UT") pursuant to an agreement that made any information or discoveries by the Japanese scientist the exclusive property of UT. Id. at 1360. After the Japanese scientist's employer filed for a Japanese patent based on the research performed at UT, UT sued it in the Texas state courts for, among other things, breach of contract, breach of confidential relationship, and tortious interference with business opportunity. Id. The defendant removed the case to the United States District Court. Id. at 1361. The district court found that federal jurisdiction existed under §1338(a) because UT's claim of tortious interference would require it to prove: "that [its] patent overlaps the subject matter of [the Japanese] patent. This requires an interpretation of the [UT] patent, which is a substantial issue of federal law." Id.

On appeal, the Federal Circuit disagreed. Id. at 1365. It

noted that the case arose only under state law, that UT alleged the misappropriation of its proprietary information, and that UT asserted that its tortious interference claim raised issues relating to inventorship. Id. at 1362-64. In rejecting these facts as a basis for federal jurisdiction, the Federal Circuit wrote:

> [Defendant] correctly asserts that this court has held that issues of inventorship, infringement, validity and enforceability present sufficiently substantial questions of federal patent law to support jurisdiction under section 1338(a). Hunter Douglas, 153 F.3d [1318,] 1330-31 [(Fed. Cir. 1998)]. [Defendant] is incorrect, however, in asserting that such issues are raised by Plaintiffs' claim for tortious interference. This is so primarily because the patent law issues identified by [defendant] are not essential to the resolution of Plaintiffs' claim. Contrary to [defendant's] assertion, Plaintiffs would not need to prove that the [UT] patent is valid in order to establish the business expectancy element of its well-pled tortious interference claim. Issued patents are presumed valid absent proof to the contrary and UT, as the patentee..., is entitled to that presumption. 35 U.S.C. §282; Speedco, Inc. v. Estes, 853 F.2d 909, 913 (Fed. Cir. 1988) (determining that a plaintiff could rely on the statutory presumption of validity in establishing an element of his well-pled contract claim). Similarly, a determination of the true inventor [] may give rise to future claims regarding the validity of [a patent], but the presence of a possible question of inventorship does not convert the state law action into one arising under the patent laws. Consolidated World Housewares v. Finkle, 831 F.2d 261, 265 (Fed. Cir. 1987) ("That a contract action may involve a determination of the true inventor does not convert that action into one 'arising under' the patent laws.").

Id. at 1363. This analysis is equally applicable to the instant case.

This case is also analogous to Kleinerman v. Snitzer, in which

the act of alleged misappropriation was the filing of a patent application. See 754 F. Supp. 1, 2 (D. Mass. 1990) (citing Zemba v. Rodgers, 87 N.J. Super. 518 (1965)). As the court noted in Kleinerman, there, as here:

> "[Plaintiff's] right was independent of and prior to any arising out of the patent law, and it seems a strange suggestion that the assertion of that right can be removed from the cognizance of the tribunals established to protect it by its opponent going into the patent office for a later title....That decrees validating or invalidating patents belong to the Courts of the United States does not give sacrosanctity to facts that may be conclusive upon the question in issue."

Id. (quoting Becher v. Countoure Laboratories, Inc., 279 U.S. 388, 391 (1929) (Holmes, J.)).

Contrary to Rogers' contention, this case is distinguishable from Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, LLP, 504 F.3d 1262 (Fed. Cir. 2009), Immunocept, LLC v. Fulbright & Jaworski, LLP, 504 F.3d 1281 (Fed. Cir. 2007), and LaBelle v. McGonagle, No. 07-12097-GAO, 2008 U.S. Dist. Lexis 63117, *11 (D. Mass. Aug. 15, 2008)). Rogers argues that these cases establish that the determination of inventorship is necessarily a federal question. However, that is not what these cases held. Rather, these cases turn on different questions of patent law and, therefore, do not indicate that inventorship necessarily confers §1338 jurisdiction.

In Air Measurement, the Federal Circuit held that plaintiffs, in order to prevail in their malpractice suit, had to establish

that, but for their attorney's negligence, they would have prevailed in the underlying patent infringement case. See Air Measurement Technologies, 504 F.3d at 1269. Because this required the plaintiffs to prove patent infringement, the court held that the suit presented a substantial question of patent law conferring §1338 jurisdiction. Id.

Similarly, in Immunocept, the Federal Circuit held that to prevail in a malpractice suit plaintiff inventors had to demonstrate that their attorneys had made an error in drafting their patent claim. See Immunocept, 504 F.3d at 1285. In light of this, the court reasoned that "there is no way Immunocept can prevail without addressing claim scope" and "claim scope [is] a substantial question of patent law." Id. Therefore, jurisdiction was proper under §1338. Id.

Finally, in LaBelle, the District Court reasoned that because, to prevail in their malpractice suit plaintiffs "would need to establish the patentability of their claimed invention, presumably by presenting a hypothetical claim construction and infringement analysis," §1338 jurisdiction was appropriate. LaBelle, 2008 U.S. Dist. Lexis 63117 at *6. Citing Air Measurement and Immunoconcept, the court held that "subject matter jurisdiction exists here because these plaintiffs' complaint necessarily depends on the resolution of a substantial question of federal patent law." Id. at *11.

9

In each of these malpractice suits under state law the underlying question requiring resolution necessarily involved a substantial question of federal patent law, creating §1338 jurisdiction. As described earlier, that is not true with regard to the resolution of the state law misappropriation of trade secrets claims in this case.

In addition, other cases on which Rogers relies are materially different than this case. More specifically, <u>Hunter Douglas</u> and <u>MCV Inc. v. King-Seeley Thermos Co.</u>, 870 F.2d 1568 (Fed. Cir. 1989) do not support Rogers' contention that federal jurisdiction exists here.

In <u>Hunter Douglas</u>, resolution of the state law claim of injurious falsehood hinged on the merit of the defendant's claim that it had the exclusive right to manufacture items covered by its patents. <u>See</u> <u>Hunter Douglas</u>, 153 F.3d at 1323. This, in turn, required the court to determine whether the patents at issue were valid and/or enforceable. Because patent validity is a substantial question of federal patent law, §1338 jurisdiction existed. <u>See</u> <u>id.</u> at 1329.

The substantial question of federal patent law raised in <u>MCV, Inc.</u> was a determination of inventorship under 35 U.S.C. §256, which "expressly authorizes [federal] judicial resolution of co-inventorship contests over issued patents." <u>See</u> <u>MCV, Inc.</u>, 870 F.2d at 1570. Therefore, the Federal Circuit concluded that

jurisdiction under §1338 was proper.  See id.

In view of the foregoing, Plaintiff Cellect LLC's Motion to Remand (Docket No. 5) is meritorious.  It is, therefore, hereby ALLOWED and this case is hereby REMANDED to the Superior Court of Massachusetts in Suffolk County.

                                    /s/ Mark L. Wolf
                              UNITED STATES DISTRICT JUDGE